COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-283-CV

 

 

JAMES J. YAQUINTO, M.D.                                                  APPELLANT

 

                                                   V.

 

VAN ROGER BRITT, INDIVIDUALLY AND                                  APPELLEES

ON
BEHALF OF THE ESTATE OF KATHRYN ANN

BRITT,
DECEASED, AND AS NEXT FRIEND OF

AMY
BRITT, A MINOR, AND JONATHAN BRITT

 

                                              ------------

 

           FROM
THE 141ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Appellant James J. Yaquinto,
M.D. appeals from the trial court=s dismissal without prejudice of health care liability claims brought
against him by appellees Van Roger Britt, individually and on behalf of the
estate of Kathryn Ann Britt, and as next friend of Amy Britt, a minor, and
Jonathan Britt (the Britts).  In four
issues,[1]
Yaquinto generally complains that the trial court abused its discretion by
granting the Britts an extension of time to file their expert report under
former section 13.01(f) of the Medical Liability and Insurance Improvement Act[2]
(the medical liability act) because the Britts did not prove good cause,
request a hearing, or give notice. 
Yaquinto also contends that the trial court=s later attempt to grant the Britts an extension under former section
13.01(g) was improper.  We affirm. 

II.  Background Facts








On August 29, 2003, the
Britts filed their original petition naming Yaquinto as one of several
defendants in the wrongful death of Kathryn Ann Britt.[3]  The Britts alleged that Yaquinto (1) A[f]ailed to provide appropriate radiological interpretation,@ (2) A[f]ailed to
provide appropriate recommendations for clinical correlation,@ and (3) A[f]ailed to
radiologically assess, diagnose[,] and interpret an acute intra-abdominal
process and an acute pulmonary process.@ They contend that these failures resulted in Kathryn=s death.  








On February 23, 2004, 178
days after the Britts filed suit, they filed a motion to extend time to furnish
expert reports and curriculum vitae as required by section 13.01(d) of the
medical liability act.  In their motion,
the Britts argued that under section 13.01(f) the trial court may extend the
time period for thirty days with good cause and that good cause existed because
none of the defendants had answered and because the Britts= expert needed to review the defendants= medical records and files before he could prepare his expert
report.  The Britts did not notify
Yaquinto of the motion or request a hearing on it.[4]  The trial court nevertheless granted the
extension on February 24, 2004, as to Yaquinto, Sloane, Diffley, and Radiology
Associates, extending the deadline to file the expert reports and curriculum
vitaes until March 26, 2004.        On March 1, 2004, Yaquinto filed a section
13.01(d) motion to dismiss with prejudice, claiming that the Britts failed to
meet the 180-day deadline for furnishing an expert report and curriculum
vitae.  He also filed his original answer
on March 1, 2004, the last day that he could timely do so.  On March 26, 2004, the Britts filed a motion
to nonsuit Yaquinto, and the trial court granted the order on March 31,
2004.  On April 15, 2004, the Britts
filed another motion for additional time, this time under section 13.01(g),
seeking a Agrace period
extension,@ as to
Diffley and Radiology Associates, asserting that any error in not filing the
expert reports was due to accident or mistake. 

On April 22, 2004 Yaquinto
filed his reply to the Britts= response to his motion for rehearing and the trial court conducted a
hearing on Yaquinto=s motion to
dismiss with prejudice and the Britts= motion for a section 13.01(g) grace period extension.  In its order, the trial court denied Yaquinto=s motion to dismiss and granted the Britts= motion for a grace period extension under former section
13.01(g).  The trial court also found
that it did not have authority to grant its prior section 13.01(f) extension
and reversed its prior order granting it.[5]

III.  Issues Presented








In his first issue, Yaquinto
contends that the trial court abused its discretion when it failed to enter a
judgment of dismissal with prejudice and award Yaquinto court costs and
reasonable attorney=s fees.[6]  In his second issue, he argues that the trial
court was without authority to grant a nonsuit or a voluntary dismissal without
prejudice while the motion to dismiss with prejudice was pending.  In his third and fourth issues, he contends
that the trial court abused its discretion by (a) granting the Britts a
thirty-day extension of the statutory deadline for good cause without notice, a
hearing, or the submission of evidence, and without personal jurisdiction over
Yaquinto before he answered and (b) subsequently granting the section 13.01(g)
grace period extension because the Britts invited the error by first asking the
trial court to grant the extension under section 13.01(f). 

IV.  General Discussion








  The medical liability act was enacted by the
Texas Legislature to curtail frivolous claims against physicians and related
health care providers.  See Hart v.
Wright, 16 S.W.3d 872, 876 (Tex. App._Fort
Worth 2000, pet. denied); Horsley‑Layman v. Angeles, 968 S.W.2d
533, 537 (Tex. App._Texarkana 1998, no pet.); see also Am. Transitional Care Ctrs. of
Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001).  Under the medical liability act, a plaintiff
must provide each defending physician or health care provider one or more
expert reports, along with a curriculum vitae, not later than the 180th day
after the date on which a health care liability action is filed or else
voluntarily nonsuit the action within the same 180-day time period.  See Tex.
Rev. Civ. Stat. Ann. art. 4590i, ' 13.01(d) (1995 version); Martinez v. Lakshmikanth, 1 S.W.3d
144, 147 (Tex. App._Corpus Christi 1999, pet. denied). 
If a plaintiff fails to comply with either of these provisions and the
defendant files a motion to dismiss with prejudice, a trial court has no
discretion and must enter an order dismissing the case with prejudice and
awarding attorney=s fees as a
sanction. Tex. Rev. Civ. Stat. Ann.
art. 4590i, ' 13.01(e)
(1995 version); Moseley v. Behringer, No. 02-04-00215-CV, 2006 WL
133497, at *3 (Tex. App._Fort Worth Jan. 19, 2006, no pet.); Martinez, 1 S.W.3d at
148.  

V.  Nonsuit

We will address Yaquinto=s second issue first.  In his
second issue, Yaquinto contends that the trial court did not have authority to
grant a nonsuit while his motion to dismiss with prejudice was pending. 

 








A.  Applicable Law

Former section 13.01(d) of
the medical liability act stated,

Not later than the later of the 180th day after
the date on which a health care liability claim is filed or the last day of any
extended period established under Subsection (f) or (h) of this section, the
claimant shall, for each physician or health care provider against whom a claim
is asserted:

(1) furnish to counsel for each physician or
health care provider one or more expert reports, with a curriculum vitae of
each expert listed in the report; or

(2) voluntarily nonsuit the action against the
physician or health care provider.

 

Tex. Rev. Civ. Stat. Ann. art.
4590i, '
13.01(d) (1995 version). 

 

Rule 162 of the rules of
civil procedure provides,

At any time before the plaintiff has introduced
all of his evidence other than rebuttal evidence, the plaintiff may dismiss a
case, or take a non-suit, which shall be entered in the minutes.  Notice of the dismissal or non-suit shall be
served in accordance with Rule 21a on any party who has answered or has been
served with process without necessity of court order.

 

Any
dismissal pursuant to this rule shall not prejudice the right of an
adverse party to be heard on a pending claim for affirmative relief or excuse
the payment of all costs taxed by the clerk. 
A dismissal under this rule shall have no effect on any motion for
sanctions, attorney=s fees or other costs, pending at
the time of dismissal, as determined by the court. 

Tex. R. Civ. P. 162 (emphasis added).  

 

 








B.  Analysis

The granting of a nonsuit is
a ministerial act.  Greenberg v.
Brookshire, 640 S.W.2d 870, 871 (Tex. 1982).  A trial court generally has no discretion to
refuse to sign an order of dismissal once notice of nonsuit has been
filed.  In re Bennett, 960
S.W.2d 35, 38 (Tex. 1997) (orig. proceeding); In re Bridges, 28 S.W.3d
191, 195 (Tex. App._Fort Worth 2000, orig. proceeding). 
However, rule 162 expressly limits the right to nonsuit an entire cause
when the defendant has a claim for affirmative relief or sanctions
pending.  Bennett, 960 S.W.2d at
38; see also Tex. R. Evid.
162.  Any pending motions for
sanctions or attorney=s fees filed
prior to the motion for nonsuit or dismissal are not to be disturbed.  Hagedorn v. Tisdale, 73 S.W.3d 341,
345 (Tex. App.CAmarillo
2002, no pet.). 

In Moseley v. Behringer,
we recently held that 

former
section 13.01(e) requires a trial court to dismiss a medical liability claim with
prejudice if the claimant has failed to file an expert report or
voluntarily nonsuit its claims within 180 days when the health care provider
has filed a motion to dismiss that is countered by a claimant=s
subsequent rule 162 motion for nonsuit. 

 








Moseley,
2006 WL 133497, at *4.  In Moseley,
Randy, Stephanie, and Macie Behringer filed medical liability claims against Karan
Ruth Moseley, M.D. and Arlington Memorial Hospital Alliance, Inc. d/b/a
Arlington Memorial Hospital, alleging that Moseley failed to timely diagnose
and treat Stephanie for a prenatal infection that resulted in Macie=s premature birth and injuries. 
Id. at *1.  Moseley and
Arlington Memorial Hospital filed motions to dismiss with prejudice under
section 13.01(e) after the Behringers failed to timely file their expert
reports or voluntarily nonsuit as required by section 13.01(d).  Id. 
The Behringers did not file a response to the motions until the day of
the 13.01(e) hearing.  Id.  In their response, the Behringers asked the
trial court to grant them a section 13.01(f) extension.  Id. 


During the 13.01(e) hearing,
the Behringers orally moved to nonsuit their claims against Moseley and
Arlington Memorial Hospital under rule 162. 
Id.; see Tex. R. Evid.
162.  After hearing evidence from both
sides, the trial court granted the Behringers= nonsuit, denied the Behringers= 13.01(f) motion for extension of time, and granted Moseley and
Arlington Memorial Hospital=s motion to dismiss Ain part_without prejudice_but with the other sanctions [they] requested.@  Moseley, 2006 WL
133497, at *2.  In that case, we held
that the medical liability act trumps the absolute right to nonsuit under rule
162 and that a claimant could not voluntarily nonsuit its claim while a
provider=s previously filed section 13.01(e) motion to dismiss with prejudice
was pending.  Id. at *4.  








We hold that Moseley
is factually distinguishable from this case. 
Here, because the motion to nonsuit was filed after the motion to
dismiss with prejudice, the trial court could not have granted the nonsuit at
the time it did because Yaquinto=s motion for dismissal with prejudice and attorney=s fees was pending.  See
Hagedorn, 73 S.W.3d at 345.  However,
after the trial court held a hearing and denied Yaquinto=s section 13.01(e) motion, it granted the Britts section
13.01(g) grace period extension.  Thus,
the Britts, unlike the Behringers in the Moseley case, had an additional
thirty days to comply with the requirement of furnishing expert reports and
curriculum vitae or nonsuiting Diffley, Yaquinto, and Radiology
Associates.  See Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 13.01(g) (1995 version). 
Additionally, both the Britts and Yaquinto have treated the nonsuit as
being effective.  Because the trial court
properly held a hearing and granted the Britts= section 13.01(g) extension, we hold that the trial court=s granting of the nonsuit was effective, albeit premature because the
Britts would have had an opportunity to nonsuit Yaquinto after the section
13.01(g) extension had been granted.  We
overrule Yaquinto=s second
issue. 

VI.  Propriety of Section 13.01(g) Extension








In his third issue, Yaquinto
contends that the trial court abused its discretion by granting the Britts
their original thirty-day extension under section 13.01(f) without notice, a
hearing, or the submission of evidence, and without personal
jurisdiction over Yaquinto.  In his
fourth issue, Yaquinto argues that the trial court erred by later granting the
section 13.01(g) grace period extension because the Britts invited the error by
requesting an extension under section 13.01(f).

A.  Standard of Review

The grant or denial of a
section 13.01(g) grace period determination is reviewed under an abuse of
discretion standard.  Walker v.
Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003); Davis v. Spring Branch Med.
Ctr., Inc., 171 S.W.3d 400, 410 (Tex. App._Houston
[14th Dist.]. 2005, no pet.). To determine whether a trial court abused its
discretion, we must decide Awhether the [trial] court acted without reference to any guiding rules
[or] principles@; in other
words, whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986); Estrello
v. Elboar, 965 S.W.2d 754, 758 (Tex. App.CFort Worth 1998, no pet.).  A
trial court abuses its discretion if it exercises a Avested power in a manner that is contrary to law or reason.@  Pfeiffer v. Jacobs, 29
S.W.3d 193, 196 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).

B.  Applicable Law

Former section 13.01(g)
provided that








[n]otwithstanding any other
provision of this section, if a claimant has failed to comply with a deadline
established by Subsection (d) of this section and after hearing the court finds
that the failure of the claimant or the claimant's attorney was not intentional
or the result of conscious indifference but was the result of an accident or
mistake, the court shall grant a grace period of 30 days to permit the claimant
to comply with that subsection.  A motion
by a claimant for relief under this subsection shall be considered timely if it
is filed before any hearing on a motion by a defendant under Subsection
(e) of this section.

Tex. Rev. Civ. Stat.
Ann. art. 4590i, ' 13.01(g) (1995 version) (emphasis added).

Section 13.01(g) contains no
requirement that the extension be sought before the expiration of 180
days.  Walker v. Thornton, 67
S.W.3d 475, 479 (Tex. App.CTexarkana 2002, no pet.).  It
requires only that the request for an extension be made Abefore any hearing@ on a motion to dismiss under section 13.01(e).  Id.; Pfeiffer, 29 S.W.3d at 197.  A grant of a thirty-day grace period under
section 13.01(g) may occur at any time after the deadline for filing the expert
report has passed and before trial so long as it is requested before a hearing
on a defendant=s section
13.01(e) motion to dismiss.  Thomas v.
Healthmark Partners, L.L.C., 93 S.W.3d 465, 467 (Tex. App.CHouston [14th Dist.] 2002, pet. denied); McClure v. Landis, 959
S.W.2d 679, 681 (Tex. App.CAustin 1997, pet. denied). 
Because the Britts moved for a section 13.01(g) grace period extension before
the hearing on Yaquinto=s motion to dismiss, the trial court had discretion to consider
it.  See Walker, 67 S.W.3d at 479.













Once a trial court determines
that a motion for an extension under section 13.01(g) is timely, it must decide
whether the claimant=s failure to
meet the deadline for filing an expert report is excused by accident or mistake
and was not intentional or the result of conscious indifference.  Pfeiffer, 29 S.W.3d at 198; see
also Davis, 171 S.W.3d at 410 (discussing the standard for granting a
section 13.01(g) extension in which the failure to file was the result of
accident or mistake).  The statute does
not define what constitutes an intentional failure or conscious indifference;
however, courts have applied these terms in a manner similar to their
application in the default judgment context under Craddock v. Sunshine Bus
Lines, Inc.  134 Tex. 388, 133 S.W.2d
124, 126 (1939); see Finley v. Steenkamp, 19 S.W.3d 533, 538-39 (Tex.
App._Fort Worth 2000, no pet.); see also Walker, 67 S.W.3d at
479.  Although, we realize that Craddock
is not dispositive because this is not a default judgment case, it is
nevertheless appropriate for us to review decisions discussing the Craddock
standard for guidance.  See Walker, 111
S.W.3d at 63.  In Bank One, Texas v.
Moody, the supreme court held that a mistake of law is one of the excuses
sufficient to meet the requirements of Craddock.  830 S.W.2d 81, 84 (Tex. 1992).  However, not every act of a defendant that
could be characterized as a mistake of law is a sufficient excuse.  Walker, 111 S.W.3d at 64; Davis,
171 S.W.3d at 410.  For example, it is
not an accident or mistake when a trial court finds that a party intentionally
failed to file an expert report because a physician required a further
examination.  Walker, 67 S.W.3d at
481.

The burden is on the party
seeking relief to show some evidence of accident or mistake to demonstrate that
he did not act intentionally or with conscious indifference.  Finley, 19 S.W.3d at 539; see also
Schorp v. Baptist Mem=l Health Sys., 5 S.W.3d 727, 732 (Tex.
App._San Antonio 1999, no pet.).  It
is then the defendant=s burden to
controvert the plaintiff=s evidence
of mistake, or else an issue of mistake exists and an extension of time must be
granted.  Finley, 19 S.W.3d at
539. 








A section 13.01(g) extension
must be granted if the motion and affidavits filed by the movant set forth
facts which, if true, would negate intentional or consciously indifferent
conduct.  Id.  Some excuse, but not necessarily a good
excuse, is enough to warrant an extension of time to file the expert report, so
long as the act or omission causing the failure to file the report was, in
fact, accidental.  Horsley-Layman,
968 S.W.2d at 536; see also Jackson v. Mares, 802 S.W.2d 48, 50 (Tex.
App.CCorpus Christi 1990, writ denied). 
Generally, an accident or mistake in this context is characterized by
inadequate knowledge of the facts or an unexpected happening that precludes
compliance.  Nguyen v. Kim, 3
S.W.3d 146, 152 (Tex. App.CHouston [14th Dist.] 1999, no pet.). 
For example, courts have found that calendering errors are sufficient to
establish Amistake or
accident@ under Craddock.  Id.

Conscious indifference, on
the other hand, means failing to take some action that would seem to be
indicated to a person of reasonable sensibilities under similar
circumstances.  Id.; see also
Pfeiffer, 29 S.W.3d at 198.  In
determining whether a claimant acted intentionally or with conscious
indifference, we look to the claimant=s knowledge and acts.  Sandles
v. Howerton, 163 S.W.3d 829, 837 (Tex. App.CDallas 2005, no pet.); see also Horsley-Layman, 968
S.W.2d at 536.  Proof of accident or
mistake negates intent or conscious indifference.  Nguyen, 3 S.W.3d at 152.  

C.  Analysis

The Britts argue that they
relied on the trial court=s February
24 13.01(f) extension order that extended the expert report deadline to March
26, 2004. They contend that if their reliance was not proper, then it was due
to accident or mistake.  The Britts
further argue that if the trial court had denied their 13.01(f) extension
motion, they would still have had time to nonsuit Yaquinto before the
expiration of the statutory deadline.








Yaquinto argues that because
the trial court did not have personal jurisdiction over him when it entered the
order extending the deadline under section 13.01(f), that the order is Avoid, voidable, or otherwise subject to vacation.@[7]

In their April 15
section13.01(g) motion for grace period extension, the Britts argued that their
reliance on the  trial court=s section 13.01(f) extension order constituted an accident or mistake.  They contend that they relied on the trial
court=s extension and provided the expert reports to Yaquinto in the time
authorized by the trial court=s extension.

During the April 22 hearing,
the Britts argued that they relied on and complied with the trial court=s February 24 13.01(f) extension order.  They contend that if the trial court was to
grant Yaquinto=s motion to
dismiss with prejudice because the February 24 13.01(f) extension order was not
proper, then they would have no remedy to bring him back into the lawsuit.  The trial court stated that the issue before
it at the hearing was whether or not a party=s reliance on a voidable order can constitute a mistake or whether
the  party=s reliance on such an order constitutes an intentional act or
conscious indifference. 








Yaquinto argued that in Walker
v. Gutierrrez, the supreme court made it clear that lawyers and litigants
are charged with knowing the requirements of section 13.01.  111 S.W.3d at 64.  He further argued that the Britts= reliance on the order was not an accident or mistake but was a
conscious decision by the Britts to rely on an order that on its face violates
the statute.  However, it is clear that
the trial court disagreed.  At the
hearing the trial court stated,

[I]t
is a very close call with respect to the 13.01(f) motion.  I think the entirety of the evidence suggests
that it should be granted.

I do not think that the 13.01(g) is a close call,
in my opinion.  I believe that it is
clear that [the] request for extension under 13.01(g) should be granted.

 

In its May 12 order, the trial court found that
it had no authority to grant the previous section 13.01(f) extension, set aside
its section 13.01(f) extension order, and granted the Britts= section 13.01(g) grace period extension.








Thus, we must first determine
whether the February 24, 2004 13.01(f) extension order entered by the trial
court was void or voidable because Yaquinto had not yet filed his answer by the
time the trial court granted the Britts= section 13.01(f) extension. 
Because Yaquinto concedes that the section 13.01(f) extension order was
merely voidable,[8]
we need only determine whether the Britts showed that they were entitled to a
section 13.01(g) grace period extension due to accident or mistake.[9]

We believe that the Britts= reliance on the trial court=s original order was a mistake of law that falls within the Craddock
test.  The trial court signed the
February 24 order extending the deadline for filing the expert reports and
curriculum vitae until March 26, 2004. 
Even though the Britts filed for an extension under 13.01(f) and not
13.01(g), they had the right to rely on the trial court=s order granting the 13.01(f) extension. See Saenz v. Sanders,
241 S.W.2d 316, 318 (Tex. Civ. App._San
Antonio1951, no writ) (parties must obey even invalid orders until
overturned).  Because we conclude that
relying on a trial court=s erroneous
order is a mistake of law encompassed by Craddock, we hold that the
Britts met their burden of providing evidence of accident or mistake.  Thus, we overrule Yaquinto=s third issue. 








Moreover, the doctrine of
invited error does not preclude the Britts from asking the trial court to
correct its prior order.  See AY@ Propane
Serv., Inc. v. Garcia, 61 S.W.3d 559, 570 (Tex.
App._San Antonio 2001, no pet.) (invited error doctrine only applies when a
party asks something of the trial court and then complains on appeal that the
trial court gave it to him).  Here, the
Britts acknowledge on appeal that the trial court=s original order was incorrect. 
They seek on appeal to affirm the trial court=s decision to change its initial order at their request.  A trial court may reconsider and change its
order at any time as long as it has plenary power.  Moore v. Brown, 993 S.W.2d 871, 874
(Tex. App.CFort Worth
1999, pet. denied).  Therefore, we
overrule Yaquinto=s fourth
issue.  

VII.  Section 13.01(e)








In his first issue, Yaquinto
contends that the trial court abused its discretion by failing to enter a
judgment of dismissal with prejudice under section 13.01(e) and by failing to
award him court costs and attorney=s fees.  In Moseley, we
held that a trial court has no discretion but to grant a dismissal with
prejudice when a claimant fails to file an expert report or dismiss within 180
days of filing the claim.  We held that a
trial court has no authority to grant a nonsuit or voluntary dismissal once a
provider has filed for dismissal with prejudice under section 13.01(e).  In Moseley, however, we did not reach
the issue of a trial court=s discretion to grant a section 13.01(g) grace period extension
despite the fact that the provider has already sought dismissal with
prejudice.  The claimants in Moseley did
not appeal the trial court=s denial of their request for a grace period extension. 

Here, the trial court granted
the extension and Yaquinto has clearly challenged that grant.  Under the statute, the only way a claimant
can extend the 180-day period is to file a section 13.01(f) or 13.01(g)
extension or nonsuit the defendant.  See,
e.g., Buruato v. Mercy Hosp. of Laredo, 2 S.W.3d 385, 388 (Tex. App._San
Antonio 1999, pet. denied) (explaining that once 13.01(e) motion filed, only
means of preventing dismissal is to request 13.01(g) extension).  We held above that the trial court did not
abuse its discretion by granting the Britts= section 13.01(g) grace period extension.  Regardless, Yaquinto argues that he is
entitled to attorney=s fees and
court costs.  However, because the trial
court properly granted a 13.01(g) extension, the trial court cannot grant the
sanction of attorney=s fees and
court costs under section 13.01(e).  See
Tex. Rev. Civ. Stat. Ann.
art. 4590i, ' 13.01(e)
(1995 version).  Therefore, we conclude
that the trial court did not have the authority to award Yaquinto attorney=s fees and court costs.  See
id.  We overrule Yaquinto=s first issue.

 

 








VIII.  Conclusion

We hold that the trial court
properly granted the section 13.01(g) extension.  Having overruled appellant=s four issues, we affirm the judgment of the trial court.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

 

DELIVERED:
March 9, 2006








Appendix
I

 

TIME
LINE OF EVENTS

 




 
 
  
 DATE
 
 
  
 EVENT
 
 
 
 
  
 08-29-2003
 
 
  
 Britts file Original
 Petition
 
 
 
 
  
 02-05-2004
 
 
  
 Yaquinto served
 
 
 
 
  
 02-23-2004
 
 
  
 Britts file motion
 to extend time to furnish expert reports and curriculum vitae as to Sloane,
 Diffley, Yaquinto, and Radiology Associates
 
 
 
 
  
 02-24-2004
 
 
  
 Order granting
 13.01(f) as to Sloane, Diffley, Yaquinto, and Radiology Associates
 
 
 
 
  
 03-01-2004
 
 
  
 Original Answer of
 Diffley, Yaquinto, and Radiology Associates
 
 
 
 
  
 03-01-2004
 
 
  
 Motion to Dismiss
 with Prejudice filed by Diffley, Yaquinto, and Radiology Associates
 
 
 
 
  
 03-10-2004
 
 
  
 Diffley, Yaquinto,
 and Radiology Associates Motion for Rehearing on, and Responses and
 Objections to, the Britts motion to extend time to furnish expert reports
 
 
 
 
  
 03-26-2004
 
 
  
 Britts motion to
 nonsuit Sloane, Yaquinto, and Harris Methodist Fort Worth
 
 
 
 
  
 03-31-2004
 
 
  
 Order granting the
 nonsuit as to Sloane, Yaquinto, and Harris Methodist Fort Worth
 
 
 
 
  
 04-15-2004
 
 
  
 Britts respond to
 Diffley and Radiology Associates= motion for
 rehearing on, and response and objection to, Britts= motion to extend
 time to furnish expert reports and article 4590i, section 13.01 motion to
 dismiss with prejudice, and alternatively, Britts= verified motion for
 thirty days additional time under section 13.01(g)
 
 
 
 
  
 04-22-04
 
 
  
 Sloane, Diffley,
 Yaquinto, Harris Methodist Fort Worth, and Radiology Associates= reply to Britts= response to
 defendant=s motion for
 rehearing and the hearing was held
 
 
 
 
  
 04-22-04
 
 
  
 Hearing on Yaquinto=s
 motion to dismiss with prejudice and the Britts=
 motion for a section 13.01(g) grace period extension
 
 
 
 
  
 05-12-04
 
 
  
 Order granting
 13.01(g) extension and Adenying@ 13.01(f) extension
 
 




 








 











[1]In
appellant=s
brief, he lists six issues; however, he only substantively addresses four
issues.  Therefore, we will address
appellant=s
four substantive issues.  See Tex. R. App. P. 47.1.





[2]See Act
of May 5, 1995, 74th Leg., R.S., ch. 140, ' 1, sec. 13.01, 1995 Tex.
Gen. Laws 985, 985-87, repealed by Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, '
10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. '
74.351 (Vernon Supp. 2005)).  All section
references in this opinion are to the 1995 version of Texas Revised Civil
Statutes article 4590i, the medical liability act, which was in effect at the
time this suit was filed and will be referred to as the A1995
version@ or Aformer
version.@





[3]The
Britts also named Robert W. Sloane, Jr., M.D. (Sloane), David M. Diffley, M.D.
(Diffley), Harris Methodist Fort Worth, and Radiology Associates of Tarrant
County, P.A. (Radiology Associates) as defendants. 





[4]Yaquinto
had been served on February 5, 2004, but he had not answered as of the time the
Britts had to request their extension. 





[5]We
have attached a time line of events as Appendix I.  





[6]The
Britts argue that the law of the case doctrine moots Yaquinto=s
appeal in which he complains of the same orders that defendant Diffley=s
prior petition for writ of mandamus addressed. This court denied Diffley=s
petition for mandamus in a separate mandamus proceeding.  In In re AIU Insurance Company, the
Texas Supreme Court held, Athis Court=s
failure to grant a petition for writ of mandamus is not an adjudication of, nor
even a comment on, the merits of a case in any respect, including whether
mandamus relief was available.@  148 S.W.3d 109, 119 (Tex. 2004) (orig.
proceeding).  Therefore, we determine
that the law of the case doctrine does not apply in this case.

 





[7]Interestingly,
the Britts waited until two days before the expiration of the 180-day deadline
to get their extension under 13.01(f). 
Similarly, Yaquinto waited until the last day that he could_March 1_to answer and file his
motion to dismiss with prejudice.  March
1 was past the Britts= 180-day deadline of February
25, 2004.  Thus, the Britts could not
have given notice to Yaquinto and held a hearing before the 180 days had
passed.   





[8]In
his April 22 reply to the Britts= response to his motion for
rehearing, Yaquinto argued that the February 24 order was voidable. 





[9]Yaquinto
argues that the trial court could not grant a section 13.01(f) extension
because he had not yet answered. 
However, personal jurisdiction is dependent on citation being issued and
served as required by law.  Mantis v.
Resz, 5 S.W.3d 388, 390 (Tex. App._Fort
Worth 1999, pet. denied), overruled on other grounds by Sheldon v. Emergency
Med. Consultants, I, P.A., 43 S.W.3d 701 (Tex. App._Fort Worth 2001, no
pet.).  Therefore, the trial court had
personal jurisdiction over Yaquinto.